UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH TAYLOR,

        Plaintiff,

v.

COUNTY OF OAKLAND, CITY OF SOUTHFIELD,
FREDERICK ZORN, SOUTHFIELD NON-PROFIT
HOUSING CORP., SOUTHFIELD NEIGHBORHOOD
REVITALIZATION INITIATIVE, LLC, and
KENSON SIVER,

        Defendants.

Case Number 19-12548
Honorable David M. Lawson

_____/

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS BY DEFENDANTS CITY OF SOUTHFIELD, SOUTHFIELD NON-PROFIT HOUSING CORP., AND SOUTHFIELD NEIGHBORHOOD REVITALIZATION INITIATIVE, LLC., AND GRANTING MOTION TO STRIKE CLASS ALLEGATIONS**

Oakland County foreclosed on plaintiff Kenneth Taylor's home to cover his delinquent tax obligation. When Taylor failed to redeem his property, the County sold it to the City of Southfield, which sold it to other defendants in the case. Taylor alleges that his home was worth considerably more than the amount of the property taxes he owed. He has sued the County and everyone else in the chain of transfer to recovery the excess value and other damages. He also seeks to pursue his claim on behalf of a class of similarly situated property owners. The City of Southfield and its individually named officials, the Southfield Neighborhood Revitalization Initiative (SNRI) and its affiliated entity, Southfield Non-Profit Housing Corporation (SNHC), have moved to dismiss the complaint, contending that the conspiracy-based claims against them cannot succeed because these defendants did not enter the picture until after the County had foreclosed and seized the property. Oakland County has moved to strike the class allegations, contending that it is not administratively feasible to identify the class members. The motions are fully briefed, and oral argument will not

assist in their resolution. The Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2).

The sole claim against all the defendants (except Oakland County) charges that they conspired to take the plaintiff's property — the value in excess of the delinquent tax debt — and thereby deprive him of his civil rights. But because the property was seized before these defendants became involved, they could not have conspired to cause a harm that already had occurred. Therefore, the complaint fails to state a viable claim against those defendants and the motion will be granted. Identifying the putative class members likely would require a series of mini-trials to determine whether delinquent tax foreclosures resulted in a deprivation of excess equity. Therefore, the plaintiff cannot prevail on the ascertainability, predominance, and superiority requirements for class certification. The defendants' motions to dismiss will be granted, and Oakland County's motion to strike the class allegations will be granted. The case will proceed as an individual action against Oakland County only.

I.

The basic facts are undisputed. Taylor owned a house in Southfield, Michigan. When he failed to pay the real estate taxes due on the property in 2014 and other prior years, the Oakland County Treasurer foreclosed on the property as allowed by the Michigan General Property Tax Act, Mich. Comp. Laws §§ 211.1, *et seq*. On February 8, 2017, the Oakland County, Michigan circuit court entered a judgment of foreclosure.

Taylor did not redeem the property by paying the outstanding tax liability, appeal the foreclosure, or seek post-judgment relief. Exercising a then-applicable provision of the General Property Tax Act, the Oakland County Treasurer took absolute title to the property and conveyed it to the City of Southfield, which in turn conveyed it to defendant Southfield Neighborhood

Revitalization Initiative, LLC (SNRI) for disposition by SNRI and its affiliated entity, Southfield Non-Profit Housing Corporation (SNHC). SNRI entered into a release with the plaintiff in which he agreed to vacate the property in consideration for a $2,000 payment. However, the plaintiff refused to vacate the property, and SNRI ultimately evicted him. Despite having equity in the home that far exceeded the amount of his unpaid property taxes, Taylor received nothing following the foreclosure.

Taylor filed a complaint without a lawyer's help on August 29, 2019, asserting various claims relating to the foreclosure of his home due to unpaid property taxes. The foreclosure resulted in Taylor losing the entire interest in his house, even though he says that the value far exceeded his tax liability. On November 12, 2020, former United States District Judge Stephanie Dawkins Davis adopted a report from a magistrate judge in this Court recommending that the complaint be dismissed without prejudice because the Court lacked subject-matter jurisdiction over Taylor's claims. However, before Judge Davis filed her opinion, the Sixth Circuit decided *Freed v. Thomas*, 976 F.3d 729 (2020), which marked a "monumental sea-change" in this circuit with respect to a taxpayer's right to receive the equity in his home following a tax foreclosure. *See* Rep., ECF No. 63, PageID.1328. There, the court of appeals overruled the precedent that Judge Davis relied on when she dismissed Taylor's complaint. Under the new governing law, federal courts may exercise jurisdiction over claims challenging the right of a local taxing authority to retain foreclosure proceeds in excess of an unpaid tax liability. *Freed*, 976 F.3d at 734-40. A year after the dismissal, Taylor, then represented by counsel, filed a motion to reopen his case and file an amended complaint. The plaintiff's motion was referred to Magistrate Judge David R. Grand, who issued a report recommending that the Court grant Taylor's motion to reopen and allow him

to file an amended complaint. The defendants filed timely objections to the report and recommendation, which the Court overruled.

Taylor filed a first amended complaint, which pleads claims against defendant Oakland County for (1) unlawful taking of property without just compensation in violation of the Fifth and Fourteenth Amendments (Count I), (2) inverse condemnation (Count II), and (3) procedural due process violations (Count III); and it pleads claims against defendants City of Southfield, SNHC, and SNRI and the named City officials (Frederick Zorn and Kenson Siver, who also are board members of SNHC and SNRI) for unlawfully conspiring to violate the plaintiff's property rights (Count IV).

At the parties' request, the Court enlarged the dispositive motion deadline, and on April 24, 2023, defendants City of Southfield, Siver, and Zorn filed a motion to dismiss arguing that the amended complaint failed to state any viable cause of action against the City for any taking of the plaintiff's equity interest, and further contending that the individual defendants were entitled to qualified immunity. On the same date, defendants SNHC and SNRI filed a motion to dismiss arguing that as a matter of law their post-foreclosure conduct in acquiring the property from the City of Southfield had no causal connection with any constitutional injury to the plaintiffs, the amended complaint did not plead facts sufficient to support a claim of civil conspiracy, and all of the plaintiff's claims against SNRI and its affiliates are barred by a release of "all claims" against those entities, which the plaintiff signed in 2017, in consideration for his receipt of a payment by the defendants of $2,000 in "moving assistance" that was offered to him for his promise to vacate the residence. On June 14, 2023, defendant Oakland County filed a motion to strike the class allegations from the complaint, arguing that such claims are foreclosed by the Sixth Circuit's controlling holding in *Tarrify Properties, LLC v. Cuyahoga County*, 37 F.4th 1101 (6th Cir. 2022),

where the court of appeals upheld a decision denying a motion to certify a class of property owners who suffered a similar loss following tax foreclosures. *Id.* at 1106.

After the motions were set for oral argument, the Court referred the parties to mediation in advance of the hearing, but the retained mediator reported that the parties made essentially no serious effort to achieve a negotiated resolution, preferring instead to await the Court's rulings on their several motions.

II.

Defendants City of Southfield and its officials Fredrick Zorn and Kenson Siver seek dismissal of the sole count against them for civil conspiracy on the grounds that (1) this case is controlled by *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), and must be dismissed because all of the defendants' alleged conduct occurred after the unlawful taking and had no effect upon the plaintiff's rights, (2) it is undisputed that any acts by the City defendants occurred after the taking was accomplished by the County, and they therefore cannot constitute "overt acts" in furtherance of a taking conspiracy, (3) no City policy has been identified that could have caused the foreclosure, since it was the County, not the City, that foreclosed on the home to collect a property tax debt owed to the County, and (4) the individual defendants are entitled to qualified immunity because there was no clearly established law recognizing a right to recovery of excess equity in a home subject to tax foreclosure before the Sixth Circuit's watershed decision in *Freed v. Thomas*, which reversed decades of precedential case law. Defendants SNRI and SNHC make similar arguments. They also add that all of the claims are barred by a release of claims that the plaintiff executed in 2017 in consideration for a payment of $2,000 in "moving assistance" intended to assist the plaintiff with vacating the home.

The plaintiff responds that (1) *Hall* is distinguishable because that case did not involve a civil conspiracy claim, and in *Sinclair v. Meisner*, No. 22-1264, 2022 WL 18034473 (6th Cir. Dec. 29, 2022), the Sixth Circuit remanded a civil conspiracy claim to be reconsidered by the district court in light of its decision in *Hall*, and (2) the plaintiff has alleged numerous "overt acts" through which SNRI and SNHC and their principal officers and shareholders, some of whom also held official positions with the City, persuaded the City to exercise its right of first refusal to obtain foreclosed properties and then transfer them to SNRI to be sold for a profit. Addressing SNRI's and SNHC's motion, he adds that the "release of claims" had nothing to do with his taking claim, since it was only concerned with removal of his personal belongings from the home, not with any claim for unlawful taking.

The plaintiff brought his claims under 42 U.S.C. § 1983, under which he must plead and prove that he suffered the deprivation of a right secured by the Constitution or laws of the United States by a person acting under color of state law. *West v. Atkins*, 487 U. S. 42, 48 (1988). The constitutional right he cites is found in the Fifth Amendment, which prohibits governments from taking private property "for public use without just compensation." U.S. Const. amend. V; *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897) (applying the Takings Clause to the states through the Fourteenth Amendment). He also cites parallel state law, which Michigan courts interpret as coextensive with federal law. *See Peterman v. State Dep't of Nat. Res.*, 446 Mich. 177, 184 n.10, 521 N.W.2d 499, 504 n.10 (1994).

It is beyond debate by now that a government's foreclosure of a private home to satisfy a tax debt that is less than the fair market value of the home at the time of the seizure, coupled with a subsequent refusal by the foreclosing authority to refund the excess value to the divested homeowner, constitutes an unlawful taking of private property prohibited by the Fifth Amendment.

The Sixth Circuit so held when it reversed decades of contrary case law in its watershed decision in *Hall v. Meisner*, 51 F.4th 185, 188 (6th Cir. 2022) ("The government may not decline to recognize long-established interests in property as a device to take them. That was the effect of the Michigan Act as applied to the plaintiffs here; and we agree with the plaintiffs that, on the facts alleged here, the County took their property without just compensation. We therefore reverse the district court's dismissal of their claim against the County under the Takings Clause of the U.S. Constitution."). That rule of law was inscribed into the edifice of Fifth Amendment jurisprudence by the Supreme Court's recent decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). *Id.* at 639 ("The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a 'classic taking in which the government directly appropriates private property for its own use.' Tyler has stated a claim under the Takings Clause and is entitled to just compensation.") (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324 (2002)).

The question now before the Court is not whether the amended complaint adequately pleads a case of liability for an unlawful taking, but instead which of the named defendants on whom the burden of that liability may rest. The Sixth Circuit addressed that question squarely in *Hall* and held that "the County alone is responsible for the taking of the plaintiffs' property." *Hall*, 51 F.4th at 196. The court reasoned that "'the act of taking is the event which gives rise to the claim for compensation" under the Fifth Amendment. *Ibid.* (quoting *Knick v. Twp. of Scott*, --- U.S. ---, 139 S. Ct. 2162, 2170 (2019). And that occurred for Hall when the County took "absolute title" to his home. *Ibid.* However, remember that the court of appeals upheld the dismissal of all of the plaintiff's other causes of action besides the taking claim, adopting the reasoning of the

district court. *Id.* at 196-97. The dismissed claims included allegations based on the Eighth Amendment Excessive Fines clause, procedural due process, substantive due process, and unjust enrichment.

Following up on the new rule laid down in *Hall*, the Sixth Circuit has explained in subsequent decisions that if a public auction is held to dispose of the property, then the recoverable compensation for the property taken is limited to the excess of the sale price at auction over the tax debt. *Freed*, 81 F.4th at 659. The property here was not sold at public auction. Instead, it was transferred under a now-repealed statutory procedure for a "minimum bid," and then at a nominal price. *See* Mich. Comp. Laws § 211.78(m)(1) (2015) (allowing municipalities to purchase foreclosed property for the "minimum bid," that is, the amount of the delinquent taxes plus certain other charges) *with* Mich. Comp. Laws § 211.78(m)(1) (2021) (requiring purchasing municipalities to pay "the greater of the minimum bid or the fair market value of the property" to purchase foreclosed property). That circumstance does not affect the issue of taking, although it may impact the amount of just compensation.

The amended complaint pleads a single count for civil conspiracy against the City of Southfield, its officials, and SNRI and its affiliated entity, SNHC. To state a claim of conspiracy under section 1985, the plaintiff must allege (1) that a single plan existed; (2) that the alleged conspirators shared in the general conspiratorial objective to deprive the plaintiff of his constitutional or federal statutory rights; and (3) that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). As *Hall* and its progeny make clear, though, the sole cognizable injury to the plaintiff's rights is the taking of the value of his residence that exceeds an assessed tax debt. That act occurred when absolute

title to the property transferred to the County. At that point, the foreclosing authority — Oakland County — was the lone party liable for such a taking.

The plaintiff proclaims in his amended complaint that "[t]he instant litigation does not challenge the forfeiture and foreclosure of the subject properties. Rather, it challenges what occurred after the properties were forfeited and foreclosed upon." Am Compl. ¶ 3, ECF No. 77, PageID.1513. In his opposition brief, the plaintiff expounds at length on the circumstances, which, he says, prove an allegedly conspiratorial plan between the City of Southfield and SNRI, but he has not pointed to any facts — either alleged or provable — that in any way suggest that either the City or SNRI engaged in an agreement *with Oakland County*, or that any such agreement in any way influenced or caused the foreclosure of the plaintiff's home. The deprivation of rights in this case was the taking of the home by a tax foreclosure. There are no facts either alleged or evidenced by the record suggesting that the City or SNRI had any involvement in the County's decision to foreclose on the plaintiff's home. There is, therefore, no conceivable set of facts on which the plaintiff could prevail on his civil conspiracy count against the City, its officials, SNRI, or SNHC.

The plaintiff says that *Sinclair v. Meisner*, No. 22-1264, 2022 WL 18034473 (6th Cir. Dec. 29, 2022) (order), held otherwise, and that *Hall* did not involve a conspiracy claim. Contrary to the plaintiff's position, the *Sinclair* panel did not hold that a civil conspiracy claim was viable on facts such as those alleged here. Instead, the court of appeals held only that the dismissal of a conspiracy claim on the sole ground that no constitutional violation adequately was pleaded was improper in light of its holding in *Hall*. *See id.* at *5 ("The district court found that Sinclair's civil-conspiracy claim would be futile because she failed to plausibly allege that any defendant violated her constitutional rights. This finding, again, is erroneous in light of *Hall*. Because decisions regarding motions for leave to amend are subject to the district court's discretion, the district court

should reevaluate Sinclair's civil conspiracy claim in light of *Hall*."). That decision cannot be read for the proposition that an alleged conspiracy may be proven in the absence of any allegation that the party solely responsible for a constitutional injury participated in any agreement with other named defendants.

It is not enough to allege that one defendant caused an injury while other defendants, who never entered into any agreement with the sole culpable party, conspired among themselves to accomplish some other evil that itself had no impact on the violation of the plaintiff's constitutional rights. The Sixth Circuit made clear in *Hall* that nothing that occurred after the tax foreclosure had any impact on the plaintiff's property rights, because after that event the plaintiff no longer held any title to his home. *Hall*, 51 F.4th at 196 ("Before that event, the plaintiffs held equitable title; after it, they held no title at all.").

The plaintiff's contrary arguments entirely overlook or misconstrue the controlling holding in *Hall*, and the plaintiff's presentation fails to identify any pleaded facts that could establish a conspiracy involving Oakland County and any of the other defendants. *See Tawana Hall v. Meisner (Hall II)*, No. 21-1700, 2022 WL 7478163, at *1 (6th Cir. Oct. 13, 2022) ("The plaintiffs in both this appeal and [*Hall I*] have a surfeit of alternative claims and defendants. To begin with some defendants: we affirm the district court's dismissal of all the plaintiffs' claims against the City of Southfield, the Corporation, and the Initiative. The relevant actions of these defendants came after the County took absolute title to plaintiffs' homes. That was the action that caused the injury giving rise to this suit; what happened afterward had no effect upon their legal rights."); *Flummerfelt v. City of Taylor*, No. 22-10067, 2023 WL 4704878, at *6 (E.D. Mich. July 21, 2023) ("While acts in furtherance of the conspiracy are alleged to have occurred before at least one of the foreclosures at issue here took place, nothing in the Amended Complaint suggests that Wayne

County's actions in conducting the foreclosure are part of the conspiracy. Indeed, the alleged conspiracy only relates to the abuse of the ROFR program, which necessarily occurs after each of the foreclosures took place and of which Wayne County is not alleged to be a part. Accordingly, the alleged constitutional deprivations (the taking and the due process violation) were completed by Wayne County when it foreclosed on the subject properties and the purpose of any conspiracy could not have been to deprive Plaintiffs of these federal constitutional rights. Thus, Plaintiffs' Amended Complaint fails to plausibly allege an essential element of a § 1983 civil conspiracy (a deprivation of a federal right) and the Magistrate Judge correctly concluded that this claim must be dismissed.").

The amended complaint does not allege facts that make out a viable claim of conspiracy to violate civil rights against the defendants. The motions by the City of Southfield, its officials, SNRI, and SNHC will be granted.

### III.

The plaintiff wants to bring this claim as a class action and has alleged that he is similarly situated to other property owners whose property was taken by the delinquent tax foreclosure procedures and who were not paid the equity that exceeded their tax debt. Defendant Oakland County argues that (1) the claims of any potential absent class members whose property was foreclosed and sold by Oakland County were the subject of a separate class action that was resolved by a settlement and the entry of a final judgment in *Tonya Bowles v. Oakland County*, No. 20-12838 (E.D. Mich.); and (2) even if the claims are not foreclosed by the class settlement in *Bowles*, class certification is barred in this case by the Sixth Circuit's holding in *Tarrify Properties, LLC v. Cuyahoga County*, 37 F.4th 1101 (6th Cir. 2022), where the court of appeals held that the district court did not err by denying class certification for nearly identical claims, since it would be

impossible even to ascertain the class membership without a "mini-trial" to determine the market value of every subject property when it was foreclosed.

The plaintiff responds that (1) the County's motion is premature because it essentially amounts to an opposition to class certification presented before any motion for class certification has been filed, (2) other courts in this district, e.g. in the *Bowles* case, have certified similar classes for foreclosure taking classes, (3) *Tarrify* is distinguishable because in that case the class included properties that were abandoned, and the court of appeals also observed that Ohio assessed tax valuations relatively infrequently (only every six years), (4) unlike Ohio, Michigan reassesses tax valuations annually, and (5) the class can be defined in a readily ascertainable manner by relying on the assessed valuation (or some multiple thereof) as a proxy for fair market value, foreclosing the need of a "mini-trial" to determine market value of each property.

Although perhaps slightly more complicated than ordering from a restaurant menu, a party seeking class certification under Federal Rule of Civil Procedure 23 must choose all four items under column (a) and pick at least one more from column (b). *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). The "(a)" requirements are numerosity, commonality, typicality, and adequate representation. Fed. R. Civ. P. 23(a). The "(b)" requirement chosen by the plaintiff requires that common questions of law or fact "predominate," and the collective approach is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).

Assuming without deciding that the plaintiff can satisfy the Rule 23(a) requirements, he still will have an insurmountable task meeting Rule 23(b)'s demands, one of which is that the class format "is superior to other available methods" of adjudicating the controversy. Fed. R. Civ. P.

23(b)(3). Among the considerations for demonstrating superiority is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). One management requirement, in turn, is identifying class members, which sometimes is referred to as "an implied ascertainability requirement." *Sandusky Wellness Ctr.*, 863 F.3d at 466 (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). The ability to identify easily the class members "aids the inherent efficiencies of the class device by ensuring administrative feasibility," which includes conveying prompt and accurate notice to putative class members. *Ibid.* "[T]he ascertainability requirement . . . necessitate[s] 'a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Ibid.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

The plaintiff wants to certify a class comprised of "all the owners of real property in Southfield, whose real property, during the relevant time period, was seized through a real property tax foreclosure, which was worth and/or which was sold for more than the Tax Delinquency, and who was not refunded the Equity." Am Compl. ¶ 70, ECF No. 77, PageID.1528. By this definition, class membership is determined by the value of a putative class member's foreclosed property compared to the amount of the tax delinquency. Determining property value, though, is necessarily an individualized inquiry. The court of appeals found that feature of a class definition problematic in *Tarrify*, another case where a county foreclosed on real property that allegedly was worth more than the tax obligation and kept the difference. 37 F.4th at 1106-07. In affirming the denial of class certification, the court pointed out that "[d]etermining fair market value requires an independent and individualized assessment of each absent class member's property" that "depends on many circumstances, including the size, location, use, and condition of the property," the "relevant market conditions at the time of the transfer," and the "physical conditions of each

property." *Id.* at 1106. That led the court to conclude that to identify putative class members, "a court must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property." *Ibid.*

The need for individualized proof to determine class membership led the court of appeals to doubt that common questions predominated over individual ones. *Ibid.* And that caused the court to question "whether the proposed class action beats the conventional approach of resolving disputes on a case-by-case basis in terms of efficiency and administrability." *Ibid.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-57 (2011)). The court found these problems with ascertainability, predominance, and superiority insurmountable for the *Tarrify* plaintiffs.

Like the plaintiff in *Tarrify*, Taylor proposes using either the tax assessment valuation or some unspecified multiple thereof as a proxy for fair market value, but the Sixth Circuit considered and expressly rejected such a proxy measurement as impractical and insufficient to overcome these problems. The court found that in Ohio, "[a] government's assessment of the value of property for tax purposes creates a 'default valuation' with respect to property value, not an unrebuttable finding of value." *Id.* at 1107. For that reason, the court believed that "[t]his challengeable presumption thus represents a potential starting point, in truth a data point, for ascertaining fair market value, not a conclusive answer." *Ibid.* Some features in that case that softened the tax assessor's property valuations were the six-year intervals between assessments, the fact that many of the properties were abandoned, and variations in depreciation. *Ibid.* The court also rejected several alternative measures of value that the plaintiff proposed for similar reasons, such as appointing special masters, creating subclasses, and conducting new mass appraisals. *See id.* at 1110. The problem was that "this case will boil down to mini-trials over each property's value upon transfer." *Ibid.*

Taylor seeks to distinguish *Tarrify* by arguing that his property was not abandoned. But that argument does not persuade. The court of appeals reasoned that (1) tax valuation is merely one data point that may have a bearing on market value, not a determination of market value *per se*, (2) variations in market conditions over time would require individualized assessments of market conditions at the time of each foreclosure, (3) tax valuations, unlike market sales, do not include any component of value based on the interior condition of the premises, (4) the methodology of tax valuation inherently is designed to be applied in gross, in order to achieve uniformity in valuation and avoid peculiarly high or low valuations for individual properties, and (5) due to the inherent nature of real estate, the specific location of every property becomes a dominant component of the valuation, which is a feature entirely overlooked by a generalized tax valuation scheme. None of those difficulties inhere only to "abandoned" properties, and the reasoning of *Tarrify* applies equally to all real properties involved in suits over unlawful takings by tax foreclosure. Moreover, the plaintiff's presentation of expert testimony about methods for determining the value of his home, and his argument that some multiple of the tax assessment is a more appropriate proxy for fair market value, only underscore the fact-intensive nature of the value determination.

The plaintiff argues that the need for individualized determination of *damages* is not necessarily an obstacle to class certification, citing *In re Whirlpool Corp. Front-Loading Washer Product Liability Litigation*, 722 F.3d 838, 861 (6th Cir. 2013). That argument is correct as far as it goes. But in this case the insurmountable obstacle to class administration is the determination of *class membership*, which necessarily must be accomplished at the outset of class litigation in order to supply the required notice to putative class members. *Cole*, 839 F.3d at 541 (recognizing that "(b)(3) class members are entitled to notice and are able to opt-out of the class"). No such

undertaking may even be attempted where it is impossible in the first instance to determine which properties were seized to satisfy debts that fell short of their fair market value, without an individualized inquiry into what the fair market value of each property was at the time of the foreclosure. The Sixth Circuit pointedly observed as much in an order granting a Rule 23(f) petition for interlocutory review in a case consolidated with *Bowles* on appeal. *See In re Eric Sabree*, No. 22-0111 (6th Cir. Mar. 15, 2023), ECF No. 89-2, PageID.1773 ("Our opinion in *Tarrify* presents a significant obstacle to class certification in class actions like this one, in which plaintiffs are seeking surplus equity."). The court of appeals noted that if the class consisted only of properties sold at public auction, then ascertainability might not be an insurmountable problem, but in this case it is undisputed that the plaintiff's property was *not* sold at auction. Moreover, any attempt to define a class including claims of persons whose properties were sold at auction would present even further difficulties since Taylor's claims then would no longer be typical of such absent class members.

The plaintiff says that Oakland County is jumping the gun and its arguments should await the plaintiff's own motion for class certification. However, it is clear that *Tarrify* is controlling and squarely on point, and its reasoning precludes certification of a class in this case. The Court therefore, will strike the class allegations from the amended complaint.

IV.

The plaintiff has not pleaded facts in his amended complaint that establish a viable cause of action against defendants City of Southfield, the Southfield Neighborhood Revitalization Initiative, Southfield Non-profit Housing Corporation, Frederick Zorn, or Kenson Siver. The plaintiff's class claims cannot succeed because he will not be able to satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3).

- 17 -

Accordingly, it is **ORDERED** that the motions to dismiss the amended complaint by defendants City of Southfield, the Southfield Neighborhood Revitalization Initiative, Southfield Non-profit Housing Corporation, Frederick Zorn, and Kenson Siver (ECF No. 81, 82) are **GRANTED**, and the amended complaint against them **only** is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion by defendant Oakland County to strike the class allegations from the amended complaint (ECF No. 89) is **GRANTED**, and all of the plaintiff's claims and allegations on behalf of a putative class are **STRICKEN**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   January 16, 2024