UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH TAYLOR,

                Plaintiff,                              Case Number 19-12548

v.                                                         Honorable David M. Lawson

COUNTY OF OAKLAND,

                Defendant.
_____/

**OPINION AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES**

Defendant Oakland County foreclosed on plaintiff Kenneth Taylor's home because he failed to pay his property taxes. Taylor filed this lawsuit as a putative class action alleging that the property was worth more than the amount of the delinquent taxes, and he sought to recover the excess value. Class certification was denied, and Taylor settled his individual claims against the County. Part of the settlement allowed the plaintiff to seek attorney's fees as a prevailing party under 42 U.S.C. § 1988. A considerable portion of the fees Taylor seeks in his present motion represents work performed on behalf of the absent members of the uncertified class and plaintiffs in other similar cases. Taylor's attorneys reason that because they filed a number of these cases for several different property owners under the same theory of recovery, they should be able to apportion the value of the work performed on those lawsuits and recover part of it in the present case. Taylor may recover a reasonable attorney's fee, but only for the work performed on this case. The motion for attorney's fees will be granted, but not for the full amount sought by the plaintiff.

I.

After Oakland County foreclosed on Taylor's home to cover his delinquent tax obligation, and Taylor failed to redeem his property, the County sold it to the City of Southfield, which sold

it to other former defendants in the case. Taylor alleged that his home was worth considerably more than the amount of the property taxes he owed. He sued the County and everyone else in the chain of transfer to recover the excess value and other damages. He also sought to pursue his claim on behalf of a class of similarly situated property owners. As to the Southfield defendants, the plaintiff charged that they conspired to take his property — the value in excess of the delinquent tax debt — and thereby deprive him of his civil rights.

The underlying facts concerning the disposition of Taylor's property were undisputed from the outset of the litigation. Taylor owned a house in Southfield, Michigan. When he failed to pay the real estate taxes due on the property in 2014 and other prior years, the Oakland County Treasurer foreclosed on the property as allowed by the Michigan General Property Tax Act, Mich. Comp. Laws §§ 211.1, *et seq.* On February 8, 2017, the Oakland County, Michigan circuit court entered a judgment of foreclosure.

Taylor did not redeem the property by paying the outstanding tax liability, appeal the foreclosure judgment, or seek post-judgment relief. Exercising a then-applicable provision of the General Property Tax Act, the Oakland County Treasurer took absolute title to the property and conveyed it to the City of Southfield, which in turn conveyed it to defendant Southfield Neighborhood Revitalization Initiative, LLC (SNRI) for disposition by SNRI and its affiliated entity, Southfield Non-Profit Housing Corporation (SNHC). SNRI entered into a release with Taylor in which he agreed to vacate the property in consideration for a $2,000 payment. However, Taylor refused to vacate the property, and SNRI ultimately evicted him. Despite having equity in the home that exceeded the amount of his unpaid property taxes, Taylor received nothing following the foreclosure.

Taylor filed a complaint without a lawyer's help on August 29, 2019, asserting various claims relating to the foreclosure of his home due to unpaid property taxes. The foreclosure resulted in Taylor losing the entire interest in his house, even though he says that the value far exceeded his tax liability. On November 12, 2020, former United States District Judge Stephanie Dawkins Davis adopted a report from a magistrate judge in this Court recommending that the complaint be dismissed without prejudice because the Court lacked subject-matter jurisdiction over Taylor's claims. However, before Judge Davis filed her opinion, the Sixth Circuit decided *Freed v. Thomas*, 976 F.3d 729 (2020), which marked a "monumental sea-change" in this circuit with respect to a taxpayer's right to receive the equity in his home following a tax foreclosure. There, the court of appeals overruled the precedent that Judge Davis relied on when she dismissed Taylor's complaint. Under the new governing law, federal courts may exercise jurisdiction over claims challenging the right of a local taxing authority to retain foreclosure proceeds in excess of an unpaid tax liability. *Freed*, 976 F.3d at 734-40. On November 12, 2021, one year after the dismissal, Taylor, now represented by counsel, filed a motion to reopen his case and for leave to file an amended complaint. The Court ultimately granted the motion and reopened the case on March 26, 2023, and Taylor filed an amended complaint through counsel.

In the amended complaint, filed on April 10, 2023, Taylor asserted claims against defendant Oakland County for (1) unlawful taking of property without just compensation in violation of the Fifth and Fourteenth Amendments (Count I), (2) inverse condemnation (Count II), and (3) procedural due process violations (Count III); and he brought claims against defendants City of Southfield, SNHC, and SNRI and the named City officials (Frederick Zorn and Kenson Siver, who also are board members of SNHC and SNRI) for unlawfully conspiring to violate the plaintiff's property rights (Count IV).

The Court entertained motions to dismiss filed by defendants City of Southfield, Kenson Siver, Frederick Zorn, Southfield Non Profit Housing Corporation (SNHC), and Southfield Neighborhood Revitalization Initiative, LLC (SNRI).  On June 14, 2023, defendant Oakland County filed a motion to strike the class allegations from the complaint, arguing that such claims were foreclosed by the Sixth Circuit's controlling holding in *Tarrify Properties, LLC v. Cuyahoga County*, 37 F.4th 1101 (6th Cir. 2022), where the court of appeals upheld a decision denying a motion to certify a class of property owners who suffered a similar loss following tax foreclosures. *Id.* at 1106.

After the motions were set for oral argument, the Court referred the parties to mediation in advance of the hearing, but the retained mediator reported that the parties made essentially no serious effort to achieve a negotiated resolution, preferring instead to await the Court's rulings on their motions.

On January 16, 2024, the Court issued an opinion granting the motions to dismiss by the City-affiliated housing authority defendants, and also granting Oakland County's motion to strike the plaintiff's class allegations.  *Taylor v. Oakland County*, No. 19-12548, 2024 WL 188376, at *1 (E.D. Mich. Jan. 16, 2024).

On June 13, 2024, the Court held a final pretrial conference and a hearing on the parties' several motions *in limine* which were filed in advance of trial.  After the motion hearing was concluded, the parties indicated their desire to engage in further settlement negotiations.  Following a four-hour recess, the parties advised the Court that they had reached an agreement to resolve the surviving individual claim against the County for a payment to the plaintiff of $150,000 and an agreement by the defendant that it would not oppose a fee request under 42 U.S.C. § 1988

up to a total amount of $50,000, but that it reserved its right to assert appropriate objections to any fee demand in excess of that amount. The Court approved the settlement.

The plaintiff filed his motion for attorney fees on June 27, 2024 seeking $898,129 in attorney fees, $17,919.96 in expenses, and an award of pre-judgment interest on the fees claimed from the November 12, 2021 filing date of the motion to reopen through the date of issuance of the Court's judgment awarding fees.

II.

The plaintiff argues that as the prevailing party he is entitled under 42 U.S.C. § 1988 to recover more than $800,000 in attorney fees and approximately $18,000 in litigation expenses. The plaintiff's accounting for the fee demand includes a total of 982 hours logged by nine attorneys at various rates ranging from $165 to $625 per hour. The plaintiff concedes that a substantial number of those hours were incurred in various other cases including 23 factually similar lawsuits each brought separately against Oakland County, all of which eventually were resolved by settlements after the plaintiff in a separate matter, *Hall v. Meisner*, 51 F.4th 185 (6th Cir. Jan. 4, 2023), *cert. denied*, 143 S. Ct. 2638 (2023), prevailed on appeal with a factually identical taking claim against Oakland County. *See Hall*, 51 F.4th at 188. He contends that he is entitled to recover those fees incurred in those separate cases, including the litigation of the appeal in *Hall*, which included opposition to Oakland County's petition for *certiorari* in the Supreme Court. He argues that attorney's fees incurred in other proceedings are recoverable under section 1988 where the legal work involved is "useful and of a type ordinarily necessary to advance the civil rights litigation." *Webb v. Dyer County Board of Education*, 471 U.S. 234, 243 (1985). The plaintiff submitted 23 pages of itemized billing records logged on dates from March 9, 2021 through June 26, 2024, and resumes documenting the experience of the nine lawyers for whose work

compensation is sought. The plaintiff further argues that a 200% multiplier of the total fee claim is appropriate due to various factors including the undesirability of the litigation, the novelty of the issues involved, and the herculean labor that was called for to obtain the eventual victories in the related cases that precipitated the settlement in this case.

The defendant concedes as a threshold matter that the plaintiff is entitled to some award of fees under 42 U.S.C. § 1988. But it asserts that the issues in this case (at least, after it was reopened), were not complex, and that after the decision in *Hall v. Meisner* came down, the County accordingly conceded liability on the individual taking claim, maintained its position that class litigation was not appropriate, and asserted that the only issue remaining in dispute was the amount of damages, which should be determined by assessment of competing appraisals. It also says that there is no entitlement to pre-judgment interest on a fee award because the right to recover fees is not established until the Court rules on a motion for attorney fees following successful conclusion of the litigation. The defendant also challenges the plaintiff's claim for costs, which are not specifically identified to this case; attacks billing entries, some of which are too vague to support any determination that the work involved was directly related to this case and other entries that are duplicative; and contends that the time devoted to class certification should not be compensated because the plaintiff did not prevail on that issue.

Typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of

hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, the Court must "exclude . . . hours that were not reasonably expended." *Id.* at 434. A reasonable rate for the purpose of the lodestar calculation is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 716 (quotations omitted).

When a prevailing party provides sufficiently reliable and "particularized" billing records, "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Imwalle v. Reliance Med. Prod.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). However, the invoices furnished must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553; *see also Hensley*, 461 U.S. at 433, 437 (1983).

The number of hours reasonably expended on a matter may include such things as time spent drafting pleadings, meeting with clients, and preparing the case for trial. *Hensley*, 461 U.S. at 433-34. However, the court may reduce the number of hours claimed where the documentation is inadequate, or the time was not "reasonably expended." *Mehney-Egan v. Mendoza*, 130 F.Supp.2d 884, 886 (E.D.Mich.2001). "Hours are not reasonably expended if they are excessive,

redundant, or otherwise unnecessary. 'A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.' Mich. R. Prof'l Conduct (MRPC) 1.5." *Ibid.* (citation omitted).

There is a "strong presumption" that the lodestar represents the "reasonable" fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (holding that lodestar figure has "become the guiding light of our fee-shifting jurisprudence"). The party advocating a departure from the lodestar amount bears the burden of establishing that the adjustment is "necessary to the determination of a reasonable fee." *Ibid.* In determining whether to adjust the lodestar amount, courts may consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)).

Before the task of calculating a lodestar in this case can be undertaken, the parties' fundamental dispute must be resolved first, namely, whether plaintiff's counsel may seek compensation for work performed in related but separate lawsuits. The issue is not novel and has been addressed in appellate decisions. In *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 242-43 (1985), a prevailing plaintiff sought compensation for work performed at an administrative hearing before a school board in preparation for filing his employment discrimination case in federal court. The plaintiff insisted that his attorney's effort in the board proceedings "were 'reasonably expended' to enforce the rights protected by § 1983," since it was

"analogous to discovery, investigation, and research that are part of any litigated proceeding." *Id.* at 242.  The Court disagreed, finding that the board proceedings and the court case were separate matters, and the work performed on the former could not be compensated for the plaintiff who prevailed in the latter case.  *Id.* at 243.

A year later, the Court decided *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986), in which it allowed attorney's fees for work performed in an administrative hearing where the plaintiff defended a prior consent decree against a collateral attack.  The Court reasoned that "[p]rotection of the full scope of relief afforded by the consent decree was thus crucial to safeguard the interests asserted by" the plaintiff, and that "enforcement of the decree, whether in the courtroom before a judge, or in front of a regulatory agency with power to modify the substance of the program ordered by the court, involved the type of work which is properly compensable as a cost of litigation."  *Id.* at 558.  The Court found that the two matters could not be "divorced" from one another, and that the district court properly held that the work in the related matter was "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation."  *Id.* at 559, 561 (quoting *Webb*, 471 U.S. at 243).

The Sixth Circuit harmonized these cases in *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608 (6th Cir. 2013).  There, the court considered an attorney's fee award in a years-old lawsuit alleging that Tennessee's Medicaid program violated the requirements of the Medicaid Act, 42 U.S.C. § 1396, *et seq*.  The plaintiffs' attorneys sought compensation for work they performed in other lawsuits against the state, including other class actions, alleging the same defects in Tennessee's Medicaid program.  Acknowledging that work that was "'useful and of the type ordinarily necessary to advance' the litigation" could be compensated, the court identified a "primary requirement" that time must be "expended *on the litigation*," that is "time spent *in this case*."  710

F.3d at 630.  That requirement could not be met when the compensation sought was for "two completely separate cases with two different case numbers, two different judges, and a different group of plaintiffs." *Ibid.*  The court then laid down the following rule:

> [W]e hold that fees under § 1988 are not recoverable for work performed in a completely separate case, even if, as here, that case involves the same defendant, and even if the defendant agrees to use the materials from the separate case in the present action.  *If attorneys want fees for work performed in the separate action, whether for discovery or time spent drafting a brief, they can seek fees in that separate action.*

*Id.* at 631 (emphasis added).  The plaintiff has made no persuasive effort to distinguish *Binta*, which is on all fours with the facts here.

With this rule in mind, the conclusion is unavoidable that the billing records submitted trigger grave doubts about the propriety of the extraordinarily large fee sought in this case.  It is apparent that the plaintiff has presented an accounting that includes numerous hours of attorney work expended in several entirely separate matters.  The plaintiff claims entitlement to fees for work apparently attributable to 23 other entirely separate (and unidentified) lawsuits including, notably, the litigation of the appeal and *certiorari* application in *Hall v. Meisner*.  Conspicuously, the first six pages of the 23 pages of billing records, along with other pages, consist of entries for work performed from March 9, 2021 through November 11, 2021, during a period in which this matter was closed and dismissed, when no proceedings were pending either in this Court or any other federal forum.  *See* Billing Records, ECF No. 143-2, PageID.3164-70, 3180.  Imagine the surprise to Mr. Taylor if *he* received a bill from his attorneys for that work.  No one could dispute the unreasonableness of a fee demand like that.  Section 1988 cannot convert an unreasonable fee into a reasonable one.  "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley,* 461 U.S. at 434.

The records nominally designate billable hours incurred during the timeframe when the instant litigation was inactive in this Court and include numerous entries for legal work that undisputedly is attributable to various unidentified separate matters, which comingle with hours that conceivably legitimately could be allocated to this case. *E.g.*, PageID.3174 ("4/24/23 Meeting with DWE and MWO re status of all cases. 2.7 hours"); *ibid.* ("4/24/23 Develop SCOTUS strategy and review pending matters. 1.4 hours"); *id.* at 3175 ("12/22/23 Review briefs of active cases. 1.1 hour."); *ibid.* ("2/22/24 Review status of Taylor case and potential appeal of Bodman ruling. 1.4 hours"); *ibid.* ("3/5/24 Attention to settlement of Oakland County cases and consider strategy re same. 1.3 hours"); *id.* at 3176 ("3/25/24 Consider settlement re Hall, Sinclair, Jackson and Taylor. 2.1 hours"); *ibid.* ("3/27/24 Consider settlement strategy and review file re same; review answer to complaint. 1.4 hours"); *ibid.* ("4/10/24 Attention to property appraisals. 0.3 hours"); *ibid.* (4/11/24 Review appraisal efforts in support of settlement. 2.1 hours"); *id.* at 3178 ("5/29/24 Continued review of appraisals and other material in preparation for mediation; review and revise motion for consolidations and class certification in Sinclair; review MIL in Taylor. 4.6 hours"); *ibid.* ("5/30/24 Prepare for settlement and review pleadings and documents re same; attention to filing of class certification motion in Sinclair. 4.6 hours"). It is impossible to determine with any certainty which of the numerous entries in the 23 pages of billing ledgers were incurred directly in this litigation, since none of the entries was accompanied by any cause code or other designation of the specific civil action involved. Plaintiff's counsel concede that a majority of the billing entries in fact represent work involving other matters. And it is undisputed that a substantial portion of the billings consists of hours worked during a time when this case lay fallow, after it initially was dismissed and before it was revived. Moreover, counsel did not even enter an

appearance in this case until the motion to reopen was filed, more than a year after the case had been dismissed by the Court's predecessor.

It is undisputed that the plaintiff is entitled to a substantial fee recovery. However, in light of the pervasive inclusion of illegitimate billings throughout the legal ledger, it is impossible to determine with reasonable certainty that the plaintiff is entitled to any amount approaching the more than $800,000 in attorney fees that he seeks. The objection to the time allocated to other cases was made clear in the defendant's response to the present motion. However, despite having a clear opportunity to do so, plaintiff's counsel have made no effort to submit a supplementary accounting delineating fees incurred "in this case" from those incurred in the course of work on the various separate litigations for which billings were logged. It is therefore necessary for the Court to make some attempt, before computing the lodestar fee, to determine from the available information an appropriate discount against the gross total of hours billed.

The pervasiveness of the improper entries in the plaintiff's billing ledger demonstrates the unreliability of vast swaths of an accounting where the plaintiff claims a cumulative total of more than 980 billable hours. The exercise of sorting out legitimate and illegitimate entries is an intractable and likely impossible task because none of the entries included any indication of the associated civil action or file number. It is the plaintiff's burden to submit billing records sufficiently detailed (and sufficiently legitimate) to permit the Court to calculate a proper lodestar basis accurately. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

Under the circumstances, the Court is left with two choices: (1) disallow the fee award entirely, or (2) discount the number of billable hours to reduce the lodestar in rough proportion to the observable incidence of disallowable fees. *See Vanderhoef v. Dixon*, No. 16-508, 2020 WL

6864543, at *14 (E.D. Tenn. May 4, 2020), *R&R adopted*, 2020 WL 4673464 (E.D. Tenn. Aug. 12, 2020) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly. Here, the Court is unable to evaluate the reasonableness of the specific time expended in preparing Plaintiff's reply. Plaintiff did not submit either billing records or an affidavit to establish as a factual matter his request for fees associated with the preparation of the Reply." (citing *Hensley*, *supra.*)); *see also Bio-Med. Applications of Kentucky, Inc. v. Coal Exclusive Co.*, No. 08-80, 2011 WL 3568249, at *8 (E.D. Ky. Aug. 15, 2011) ("One option is to simply reduce the award. District courts may make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure. Another option in egregious situations is to disallow the award altogether. . . . Gibson clearly spent a significant period of time on this matter. But he has not met his burden of producing a particularized billing record.") (collecting cases discounting hours billed or gross lodestar by figures ranging from 10% to 40%).

It is clear in this case that a substantial fee award is warranted for the work that was required to see this case through to its conclusion. However, as the Court observed in conference with parties on several occasions, the issues presented at the post-reopening phase of the case were neither complex nor legally controversial, after the controlling decisions in *Hall* and *Tarrify* were handed down. The egregiousness of the excessive fee claim here warrants a severe discount against the gross amount of hours claimed, which must be a substantial portion of the total to offset the pervasive improper entries, particularly in light of the plaintiff's demand for fees that he has no right by law to recover. The defendant proposes a reduction in total hours of approximately 42% to purge plainly non-compensable billings, and a further 33% to account for vague and unspecific entries. The cumulative product of both those reductions would render a total of 376 compensable hours, representing approximately 38% of the total hours claimed. Under the

circumstances, the 62% discount is severe but appropriate in light of the plaintiff's failure to make any attempt to substantially counter the defendant's arithmetic, and the fact that he has made no effort to submit any revised and clearly segregated accounting.

The second component of the lodestar calculation is determination of a reasonable hourly rate. The plaintiff has suggested hourly rates ranging from $165 to $625 per hour for the nine attorneys who billed time against this and more than 20 separate related litigations. However, the approval of specific rates for individual counsel is problematic because, for the reasons stated above, it is impossible to determine reliably the number of hours that reasonably and legitimately were expended by each lawyer who worked on the case. Moreover, the billing entries document the work of nine attorneys, but only six lawyers entered appearances in this matter, and only three of the plaintiff's lawyers stuck with the case to its conclusion. Under the circumstances, the use of an average hourly rate is more appropriate due to the deficiencies in the accounting that make it impossible to reach any measure of certainty in partitioning the allowable fees among the several lawyers employed. For similar reasons, there is no sound basis for proportional resolution of nuances among the proposed hourly rates based on experience and competence of counsel. It is undisputed that several of the lawyers involved have decades of experience in practice. However, the highly questionable nature of the fee request in gross weighs heavily against the assignment of any premium rate for the labor performed on a wholesale basis. The State Bar of Michigan's published Economics of Law Practice for 2023 reports a median hourly rate of $300 per hour for attorneys involved in civil litigation. State Bar of Michigan, Economics of Law Practice, ECF No. 144, PageID.3208. Under the circumstances, that overall market average supplies a reasonable basis for the calculation of the lodestar.

Arithmetically, 376 hours multiplied by $300 per hour yields a lodestar figure of $112,800. That is a starting point, but not necessarily the ending point for determination of the reasonable fee to be awarded. The Court also considers the factors outlined in *Hensley*, listed earlier, to determine if any further adjustment of the fee is required. *See Hensley*, 461 U.S. at 430 n.3. The plaintiff attempts to argue that many of the factors favor a doubling of the fee award (a 100% increase or 2-times multiple). However, it is clear that this entire portion of the plaintiff's presentation concerns the applicability of the factors to the challenges and rigors of the lengthy appellate proceedings *in the related lawsuits*, not the work directly incurred in this case, where the issues presented were settled — almost entirely in the plaintiff's favor — by the time counsel filed the motion to reopen. As the defendant points out correctly — and largely conceded soon after the case was revived — the decisions on point (*Hall* and *Tarrify*) essentially left nothing more than damages to be litigated in this case, and the plaintiff has made no effort to present a focused argument demonstrating how any of the *Hensley* factors apply to the work that specifically was required to conclude this litigation. The plaintiff's presentation therefore supplies no sound basis for any principled calculation of any premium over the lodestar amount. In the absence of any good grounds for a deviation, the lodestar is presumed to be reasonable.

The plaintiff also argues that he is entitled to recover costs and expenses comprising 20% of an aggregate total of $89,000 in fees incurred in numerous unspecified related cases. The plaintiff has not cited any legal authority holding that he may recover costs or expenses incurred in separate lawsuits, and he has not rebutted the defendant's assertion that the only expense clearly incurred directly in this matter was the $750 cost of the property appraisal. No filing fee was paid because the plaintiff initially was allowed to proceed *in forma pauperis*.

Finally, the plaintiff has not cited any decision holding that he is entitled to prejudgment interest on the fee award. To the contrary, the cases on point have held that prejudgment interest on an award of attorney fees is not appropriate, because a prevailing party has no right to recovery of such fees prior to a ruling granting his fee motion. *Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999) ("Jarrett argues that to deny him the interest on his fees would effect a taking of his personal property. However, Jarrett had no legitimate claim to the $250,000 in attorney fees that he was ultimately awarded until the order to that effect was entered on May 4, 1998. Therefore, he has no right to the interest that accrued before that date, and the district court did not effect a taking in denying it to him.").

### III.

The plaintiff is entitled to attorney's fees and costs as the prevailing party for work performed by counsel *in this case*, as the Court has attempted to discern based on the information submitted.

Accordingly, it is **ORDERED** that the plaintiff's motion for attorney's fees and expenses of the litigation is **GRANT IN PART**. The plaintiff shall recover from the defendant a reasonable attorney fee of $112,800 and expenses of $750. The motion is **DENIED** in all other respects.

                                                                             s/David M. Lawson  
                                                                             DAVID M. LAWSON  
                                                                             United States District Judge

Dated:   January 6, 2025